**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

ABDUL WAHEED NADIR,[1]                    CIVIL ACTION NO. 26-0725

                                          SECTION P

VS.

                                          JUDGE ROBERT R. SUMMERHAYS

U.S. IMMIGRATION & CUSTOMS                MAG. JUDGE KAYLA D. MCCLUSKY
ENFORCEMENT

## REPORT AND RECOMMENDATION

Petitioner Abdul Waheed Nadir,[1] a detainee at River Correctional Center in the custody

of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs

Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under

28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 12].  For reasons below, the Court

should grant the petition.

## Background

Petitioner is a citizen of Pakistan.  [doc. # 1-2, p. 3].  He was taken into immigration

custody on August 18, 2024.  [doc. # 1, p. 5].  On April 11, 2025, an immigration judge ordered

Petitioner removed from the United States but granted him withholding of removal to Pakistan.

[doc. #s 1, p. 5; 1-3, pp. 1-6; 12-3].  He did not appeal to the Board of Immigration Appeals.  *Id.*

Petitioner filed this proceeding on March 4, 2026.  [doc. # 1, p. 9].  Citing *Zadvydas v.*

*Davis*, 533 U.S. 678 (2001), he claims that ICE is unlikely to remove him to a third country in

---

[1] Petitioner's "A-Number" is 226-127-132.

[2] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636, and the standing orders of the Court.

the reasonably foreseeable future. *Id.* at 7. He states, "there is no third country accepting me," and "no third country is responding[.]" [doc. #s 1, p. 8; 1-2, p. 3]. He has fully cooperated with "all of ICE's efforts to remove" him, including providing information about his country of birth and country of citizenship. [doc. # 1-2, p. 3].

"On or about April 25, 2025, ERO submitted an I-241 Request for Acceptance of Alien to People's Republic of China Embassy, Saudi Arabia Embassy, and United Arab Emirates Embassy. On or about April 29, 2025, the United Arab Emirates Embassy declined to accept the Petitioner." [doc. # 12, p. 2].

"As of June 5, 2025, responses remained pending from the People's Republic of China Embassy or the Saudi Arabia Embassy. On or about June 5, 2025, ERO submitted a request for assistance to the Removal Division for purposes of identifying alternate removal countries for Petitioner. On or about June 6, 2025, the Removal Division identified the countries of Moldova or Kosovo as potential alternate countries of removal." [doc. # 12, p. 2].

"On or about July 2, 2025, ERO submitted I-241 Requests for Acceptance of Alien were submitted to the Embassy of Moldova and Consulate General of Kosovo. . . . On or about August 14, 2025, responses remained pending from the Embassy of Moldova and Consulate General of Kosovo." [doc. # 12, p. 2].

On September 2, 2025, an ICE officer told Petitioner that "there has been no response for acceptance from a third country." [doc. # 1-3, p. 11]. On September 12, 2025, an officer told Petitioner that as of August 14, 2025, Moldova and Kosovo had not responded to ICE's requests. *Id.* at 10. On September 18, 2025, an officer told Petitioner that supervisors at ICE headquarters were "working on getting a third country for" him. *Id.* at 9. On October 3, 2025, an officer told

2

Petitioner that ICE was awaiting a response from Moldova and Kosovo. *Id.* at 8. On October 8, 2025, an officer told Petitioner: "No updates in your file." *Id.* at 7.

"On or about December 2, 2025, ERO submitted a request to the Removal Division for guidance on removal. On or about January 19, 2026, ERO submitted a request to the Removal Division for guidance on removal. On or about March 10, 2026, HQ confirmed petitioner is still pending third country acceptance." [doc. # 12, p. 3].

Petitioner states that as of approximately March 30, 2026, "ICE has not tried to remove [him] anywhere . . . ." [doc. # 3, p. 1]. Petitioner states that he does not have citizenship, nationality, or legal status in any third country. *Id.* He also lacks a visa, entry permit, or any legal right of abode in any nation other than Pakistan. *Id.* at 2. To the best of his knowledge, DHS does not possess any travel document or laissez-passer issued by a third country for him. *Id.* He states that the Government "has failed to identify a single third country willing to accept" him. *Id.* "At no point during the 11 months following the final order has DHS informed the petitioner that any third country has agreed or is considering accepting him" *Id.* He "has not been informed of any ongoing negotiations between DHS and any third-country government regarding his possible removal." *Id.* "DHS has not presented the Petitioner with any travel document, removal itinerary, or notification that a third country has agreed to accept him." *Id.*

"On or about April 10, 2026, petitioner remained [detained] pending third country acceptance." [doc. # 12, p. 3].

Respondents opposed the petition on May 5, 2026. [doc. # 12]. They argue, *inter alia*, "It is anticipated that ICE will receive a travel document for his removal in the reasonably foreseeable future." *Id.* at 5.

3

## Jurisdiction

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687. The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia*

4

*v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v.*

*Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."  *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters."  *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, he has been detained over one year following his final order of removal.

In addition, Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  For about one year, the Government has been unable to obtain a travel document for him despite his full cooperation.  And he maintains:

○ "there is no third country accepting me," and "no third country is responding";

○ he fully cooperated with "all of ICE's efforts to remove" him, including providing information about his country of birth and country of citizenship;

○ on September 2, 2025, an ICE officer told Petitioner that "there has been no response for acceptance from a third country";

○ on September 12, 2025, an officer told Petitioner that as of August 14, 2025, Moldova and Kosovo had not responded to ICE's requests;

○ on October 3, 2025, an officer told Petitioner that ICE was awaiting a response from Moldova and Kosovo;

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists."  *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

- on October 8, 2025, an officer told Petitioner: "No updates in your file";

- as of approximately March 30, 2026, "ICE has not tried to remove [him] anywhere";

- he does not have citizenship, nationality, or legal status in any third country;

- he lacks a visa, entry permit, or any legal right of abode in any nation other than Pakistan;

- to the best of his knowledge, DHS does not possess any travel document or laissez-passer issued by a third country for him; the Government "has failed to identify a single third country willing to accept" him;

- "at no point during the 11 months following the final order has DHS informed the petitioner that any third country has agreed or is considering accepting him";

- he "has not been informed of any ongoing negotiations between DHS and any third-country government regarding his possible removal'" and

- "DHS has not presented the Petitioner with any travel document, removal itinerary, or notification that a third country has agreed to accept him."

Respondents do not rebut Petitioner's showing. They do not present any evidence to rebut Petitioner's arguments above. Respondents do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal.

Respondents recount:

- The Government asked China, Saudia Arabia, and the United Arab Emirates to accept Petitioner. The United Arab Emirates declined, and China and Saudi Arabia have not responded.

- The Government asked Moldova and Kosovo if they would accept Petitioner. The Government has not received a response.

- The Government twice asked the Removal Division for guidance. There is no indication that the Removal Division responded.

That the Government has received a declination from the United Arab Emirates, no responses from China, Saudia Arabia, Moldova, or Kosovo, and no responses from the Removal Division does not establish that removal is *significantly likely* to occur in the reasonably foreseeable future. Respondents essentially present requests—which are indicative of some efforts at progress—followed by no indication of progress along with no indication that progress will occur. The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

From the record, it appears that Respondents have not even started the process of attempting to remove Petitioner to an alternative country. And they do not state how long it will take after the process begins. Yet, they still detain him. While not dispositive, the undersigned finds it persuasive that Petitioner has endured 635 days of total detention (or 1 year, 8 months, 27 days).

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[4] At best, they state, "It is anticipated that ICE will receive a travel document for his removal in the reasonably foreseeable future." [doc. # 12, p. 5].

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that

Moreover, Respondents do not, for example, provide any evidence that they have made progress in obtaining travel documents, that they have been actively communicating with any country about Petitioner's deportation (apart from receiving the denial from the United Arab Emirates), that any country has recently accepted others similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[5, 6]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not

---

travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

9

satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).  As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible.  *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Abdul Waheed Nadir's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of River Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary; and (B) if Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of his release no less than two hours before his release.

---

[7] The undersigned finds no need to address any claim or request for relief not addressed herein.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 18th day of May, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge

---

[8] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody.  The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

11